

# COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| **MARTIN BACKER,** | Docket No.: 2015-06-0023 |
| Employee, | |
| v. | State File No.: 94424-2014 |
| | |
| **AZUMA LEASING COMPANY,** | Date of Injury: November 18, 2014 |
| Employer, | |
| And | Judge: Pamela B. Johnson |
| | |
| **TRAVELERS INSURANCE COMPANY,** | |
| Insurance Carrier. | |

---

## EXPEDITED HEARING ORDER

---

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Requests for Expedited Hearing filed separately by the parties, through counsel, on March 17, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014). This Court conducted an in-person, evidentiary hearing on May 8, 2015. Upon review of the Requests for Expedited Hearing, the evidence presented at the hearing, the arguments of counsel, and in consideration of the applicable law, the Court finds Mr. Backer is not entitled to the benefits requested.

## ANALYSIS

### Issues

*Whether Mr. Backer sustained an injury arising primarily out of and in the course and scope of employment with Azuma Leasing;*

*Whether Mr. Backer provided adequate notice to Azuma Leasing of an alleged injury during his employment with Azuma Leasing;*

*Whether Mr. Backer is entitled to past or future medical expenses; and*

1

*Whether Mr. Backer is entitled to any past or future temporary disability benefits, and if so, in what amount.*

**Evidence Submitted**

The Court designated the following as the Technical Record:

- Petition for Benefit Determination (PBD), filed January 15, 2015,
- Dispute Certification Notice (DCN), filed March 17, 2015,
- Mr. Backer's Request for Expedited Hearing, filed March 17, 2015,
- Azuma's Request for Expedited Hearing, filed March 17, 2015, and
- Order of Transfer, entered April 10, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings and any attachments to them as allegations unless established by the evidence.

The Court admitted into evidence the following:

- EXHIBIT 1: Certification and Medical Records and Expenses of Sweeney Chiropractic (20 pages),
- EXHIBIT 2: Certification and Medical Records of TriStar Horizon Medical Center (64 pages),
- EXHIBIT 3: First Report of Work Injury, Form C-20,
- EXHIBIT 4: Choice of Physicians, Form C-42,
- EXHIBIT 5: Wage Statements, Form C-41 with Earning Statements attached (4 pages),
- EXHIBIT 6: Notice of Denial of Claim for Compensation, Form C-23,
- EXHIBIT 7: Mr. Backer's Signed Statement, dated December 8, 2014,
- EXHIBIT 8: Separation Notices, dated December 8, 2014, and December 9, 2014, (2 pages),
- EXHIBIT 9: Job Description (2 pages),
- EXHIBIT 10: Mr. Backer's Employment Application (2 pages),
- EXHIBIT 11: Portions of Azuma's Company Policies (6 pages),
- EXHIBIT 12: DMN Corporation Payroll Record, for pay period beginning November 15 through 28, 2014,
- EXHIBIT 13: Letter from Mary Becerra to Mr. Backer, dated December 3, 2014,
- EXHIBIT 14: Mr. Backer's Responses to Written Discovery, dated April 15, 2015, and April 27, 2015,

- EXHIBIT 15: Mr. Backer's Criminal Record of Davidson County Criminal Court Clerk and Officer's Affidavit (2 pages),[1]
- EXHIBIT 16 (Marked for Identification Only): Mr. Backer's November 18, 2014 Schedule,[2] and
- EXHIBIT 17: Mr. Backer's Recorded Statement.[3]

For purposes of the Expedited Hearing, the parties stipulated to an average weekly wage of $775.00 per week.

The following individuals offered testimony at the Expedited Hearing:

- Martin Backer,
- Rebecca McGuire,
- Mary Becerra, Azuma's Corporate Representative,
- Doug Tibbs, Jr.,
- Bryan Cobb, and
- Scott Lewis, Traveler's Insurance's Corporate Representative.

---

[1] Mr. Backer's attorney objected to the introduction of Exhibit 15 on the basis that Azuma's attorney failed to furnish a copy of Mr. Backer's Criminal Record and the Officer's Affidavit in advance of the hearing. Azuma's attorney responded that it is not required to provide a readily available, public record used to impeach a witness's statement made under oath. During the hearing, the Court marked Exhibit 15 for identification purposes only and took the matter under advisement. This Court overrules the objection and admits the Criminal Record and Officer's Affidavit for impeachment purposes. *See* Tenn. R. Evid. 613(b) (permitting **extrinsic** evidence of a prior *inconsistent* statement by a witness for impeachment purposes); *Davis v. Hall*, 920 S.W.2d 213, 216-17 (Tenn. Ct. App. 1995) ("In order for a statement to be used to impeach a witness, the statement must be *inconsistent* with the statement given at trial." (emphasis added)).

[2] Mr. Backer's attorney objected to the admissibility of Exhibit 16 on the basis that Azuma's attorney failed to furnish a copy of the November 18, 2014 schedule in advance of the hearing and further objected to its admissibility as a business record. Azuma's attorney responded that Ms. Becerra's testimony established that the schedule was a business record. During the hearing, the Court marked Exhibit 16 for identification purposes only and took the matter under advisement. This Court now sustains the objection of Mr. Backer's attorney and excludes Exhibit 16 from the record. *See* Tenn. Comp. R. & Regs. 0800-02-21-.14(1)(b)(2014) ("[I]n no event later than five (5) business days after the motion [for expedited hearing] is filed with the clerk, the opposing party shall submit all information in its possession demonstrating that the employee is not entitled to temporary disability or medical benefits.")

[3] Mr. Backer's attorney objected to the admissibility of Exhibit 17 based on hearsay because the witness, through whom Azuma attempted to introduce the recorded statement, did not take Mr. Backer's recorded statement and neither the testifying witness nor the adjuster identified in the recorded statement transcribed the recorded statement. Azuma's attorney responded that Mr. Backer admitted that he gave a recorded statement and admitted that everything he stated in the recorded statement was true and accurate. During the hearing, the Court marked Exhibit 17 for identification purposes only and took the matter under advisement. This Court now overrules the objection, finds the Recorded Statement falls under the Hearsay Exception for Records of Regularly Conducted Activity, and admits the Recorded Statement into evidence. *See* Tenn. R. Evid. 803(6) (2014).

## History of Claim

Mr. Backer worked for Azuma Leasing Company (Azuma) as a delivery driver and installer. *See* PBD. On November 18, 2014, Mr. Backer allegedly sustained an injury to his neck and back, while "taking a 350 pound stackable washer and dryer up one flight of stairs." *Id.* Mr. Backer continued working that day and returned to work on November 19, 20, 21, and 24, 2014. On the morning of November 25, 2014, Mr. Backer dressed for work, sneezed several times and reached for allergy medication from a cabinet at his home, when he experienced pain in his neck, back, and his "body locked up."

Mr. Backer sought treatment from Dr. Jim Sweeney of Sweeney Chiropractic on November 25, 2014. During the visit, Mr. Backer advised Dr. Sweeney that he experienced neck pain radiating into the upper back due to a work-related accident. *See* Exhibit 1, p. 5.[4] The office note listed the onset as "acute" and the cause of symptoms as "unknown." *Id.* Dr. Sweeney diagnosed "Displacement Of Cervical Disc Without Myelopathy," "Spasm Of Muscles," "Cervicalgia," and "Pain In Thoracic Spine." *Id.* He recommended treatment three times per week for one month. *Id.* On November 26, 2014, he recommended that Mr. Backer take off work the entire week. *See* Exhibit 1, p. 7. Dr. Sweeney continued his off work recommendation during the December 1, 2014 visit. *See* Exhibit 1, p. 9.

On December 4, 2014, he noted that Mr. Backer felt "slightly better" with "an improved ROM." *See* Exhibit 1, p. 11. Dr. Sweeney further noted that Mr. Backer expressed concern about "working with this condition because he does not want to get worse." *Id.* On December 8, 2014, he again recommended that Mr. Backer take off work the entire week. *See* Exhibit 1, p. 15. On December 12, 2014, he recorded that Mr. Backer experienced "another drop in pain" and felt "better," noting that "the pain in the upper back is better but the neck still hurts." *See* Exhibit 1, p. 16. The last office note contained in Exhibit 1 is dated December 16, 2014.

By letter dated April 28, 2015 to Mr. Backer's attorney, Dr. Sweeney stated:

> Mr. Backer was treated for a workman's comp injury from 11/25/2014 – 12/16/2014. The injury occurred a few day (sic) prior to his first treatment. He was moving an object at work and he felt a very sharp pain. He thought the pain would go away on its own but [it] kept getting worse. His symptoms

---

[4] Mr. Backer's attorney filed a Notice of Filing of Chiropractic Records and Report on April 30, 2015. Pursuant to Tenn. Comp. R. & Regs. 0800-02-21-.16(6)(c)(2014), Mr. Backer's attorney filed a Corrected Notice of Filing of Chiropractic Records and Report on May 4, 2015, wherein the chiropractic records contained page numbers in the lower, right-hand corner. The corrected, numbered version did not contain a page "0005." This Court replaced the missing page 0005 with the same page from the unnumbered, original version and added "0005" to the lower, right-hand corner of the page for ease of identification by this Court and the parties.

decrease when sitting still. He was very nervous about working with this condition. I requested Mr. Backer to take work off for the next two weeks due to the fear of causing more damage.

I have diagnosed Mr. Backer with cervical sprain/strain and mild discopathy due to the trauma he sustained with lifting an object at work. The medical bills were consistent with this type of injury. I explained to Mr. Backer that if he did notp (sic) respond to care we would refer him to another physician for a second opinion.

In the notes I stated, "unknown" and that was a mistake entered by my staff as they were performing my dictation. His injury in my clinical opinion was work related.

*See* Exhibit 1, p. 2.

Mr. Backer last worked for Azuma on November 24, 2014. On December 3, 2014, Mar Becerra, Human Resource Coordinator for Azuma, wrote Mr. Backer, advising him that Azuma unsuccessfully attempted to contact him several times, instructing him to report to the nearest Concentra Urgent Care for testing and treatment, and requesting a response by Monday, December 8, 2014. *See* Exhibit13. In the letter, Ms. Becerra further advised Mr. Backer that Azuma would consider his failure to respond as job abandonment. *Id.* On December 8, 2014, Mr. Backer faxed a hand-written response to Azuma, stating, "I am not abandoning my job, but you will be hearing from my workers compensation lawyer." *See* Exhibit 7. On December 9, 2014, Azuma issued a Separation Notice and identified the circumstances of separation as "Job abandonment. Employee has not reported to work, responded to phone call, or returned phone calls since December 4, 2014." *See* Exhibit 8.

A dispute exists between the parties as to when Mr. Backer reported the alleged work injury and home incident and what he reported as to each incident. Azuma's Carrier prepared a First Report of Work Injury on December 3, 2014, stating:

[E]mployee claimed he had a neck strain from having a sneezing fit at home. When employee found out he would not be paid for time missed he claimed it was a work injury but gave no details and will not answer calls from corporate or city manager. We will be sending a certified letter.

*See* Exhibit 3. Upon receiving notice that Mr. Backer claimed a work injury, Azuma initially instructed Mr. Backer to go to Concentra for a drug screen. Mr. Backer did not go to Concentra or complete the drug screen. Azuma's Carrier later provided Mr. Backer a panel

5

of physicians and he selected Carespot of Nashville on December 18, 2014. *See* Exhibit 4. Azuma's Carrier did not schedule or authorize an appointment for Mr. Backer with Carespot. On January 6, 2015, an investigator for Azuma's Carrier obtained Mr. Backer's recorded statement. *See* Exhibit 17. Thereafter, Azuma's Carrier filed a Notice of Denial of Claim for Compensation on January 12, 2014, based upon "subsequent intervening incident. No medical evidence of injury. Right to Reserve." *See* Exhibit 6.

Mr. Backer filed a Petition for Benefit Determination on January 15, 2015. The parties did not resolve the disputed issues through mediation and the Mediating Specialist filed the Dispute Certification Notice on March 17, 2015. On March 17, 2015, the parties separately filed Requests for Expedited Hearing. This Court conducted an in-person evidentiary hearing on May 8, 2015. Mr. Backer and his mother, Rebecca McGuire, testified on behalf of Mr. Backer. Mary Becerra, Doug Tibbs, Bryan Cobb, and Scott Lewis testified on behalf of Azuma and its workers' compensation carrier, Traveler's Insurance.

During the Expedited Hearing, Mr. Backer testified that, on November 18, 2014, he made a delivery in Cool Springs, unloaded his truck, and proceeded to pull a stackable washer and dryer up a flight of stairs, using an electric dolly. Half way up the flight of stairs, he felt a pop in his back and experienced pain the rest of the day and the remainder of the week. Mr. Backer testified that the pain was located in his mid to upper back, between his shoulder blades, and neck. Mr. Backer continued working the remainder of the day. The next morning, Mr. Backer arrived at the warehouse and reported the incident to his supervisor, Doug Tibbs. He told Mr. Tibbs that "I hurt my back yesterday" and Mr. Tibbs replied, "Yeah, you know, this job will do that to you." Mr. Backer testified that the pain became progressively worse. Mr. Backer denied any prior neck or back problems before November 18, 2014.

Mr. Backer testified that, on the morning of November 25, 2014, he dressed for work and sneezed a couple of times, when his "neck and whole body locked up." Mr. Backer testified, "I could not move my neck. I could not turn my head. I could not do anything." Mr. Backer rushed to work and told Mr. Tibbs about the sneezing incident, advised that he was unable to work in his condition, and that he intended to seek medical treatment. That same day, he sought treatment from Dr. Jim Sweeney, who diagnosed him with a twisted vertebrae and disc damage in his neck. Thereafter, Mr. Backer treated with Dr. Sweeney and reported his medical status to Mr. Tibbs following each visit.

Mr. Backer further testified that, on December 3, 2014, he advised Mr. Tibbs that he wanted to file a workers' compensation claim. Mr. Tibbs contacted Mary Becerra, who instructed Mr. Backer to go to the nearest "Concentra" to get a "drug and blood test and get medical treatment." Mr. Backer did not go to Concentra as instructed, due to concerns with Concentra's reputation or before he spoke with a lawyer concerning his rights.

6

Mr. Backer testified that he received telephone calls from Bryan Cobbs of Azuma. He later received a letter from Azuma, dated December 3, 2014, advising him that if he did not contact Azuma by December 8, 2014, Azuma would consider his nonresponse as job abandonment. In response, Mr. Backer faxed Azuma a letter to Azuma on December 8, 2014. *See* Exhibit 7. On December 9, 2014, Mr. Backer received a separation notice from Azuma, which stated, "Job abandonment. Employee has not reported to work, responded to phone call, or returned phone calls since December 4, 2014." *See* Exhibit 8.

Mr. Backer testified that he later received a C-42 form, Choice of Physicians, and selected Carespot of Nashville. *See* Exhibit 4. Mr. Backer testified that Azuma did not schedule an appointment for him. Mr. Backer described his neck pain: "It starts out in the left side of my neck and it goes all the way down into my collarbone and the same on the right side." Mr. Backer further described difficulty sleeping and increased pain with lifting over ten (10) pounds.

On cross-examination, Mr. Backer admitted that Azuma assigned him a company phone, but he did not use the company phone to report the November 18, 2014 work injury, while making the delivery in Cool Springs, Tennessee. Mr. Backer admitted that he did not request medical treatment when he reported the November 18, 2014 work injury to Mr. Tibbs the next morning. Mr. Backer denied that, on November 25, 2014, he developed neck pain when he sneezed, but testified that the neck pain began when he reached for an allergy medication in a cabinet at home. Mr. Backer also admitted that he did not seek medical treatment until following the November 25, 2014 incident.

Mr. Backer admitted that, during the first week of December 2014, Mr. Tibbs advised him that he needed to go to Concentra to submit to a drug screen. Mr. Backer admitted further that he knew from company policies that Azuma required a drug screen after a work injury, but he refused to go to Concentra for the post-injury drug test and never advised Azuma of any objection to a drug test or treatment with Concentra.

Mr. Backer additionally admitted that he knew from company policies that Azuma required employees to report absences timely and Azuma deemed an employee's failure to report to work for three (3) days as job abandonment. Mr. Backer also knew from the letter from Azuma dated December 3, 2014, that Azuma tried to reach him on several occasions. Except for the faxed letter of December 8, 2014, Mr. Backer admitted that he made no effort to contact Azuma to discuss his work status, despite that Mr. Backer maintained possession of the company phone. Mr. Backer failed to return the company phone after his termination.

Mr. Backer's mother, Rebecca McGuire, testified that she faxed a letter from Mr. Backer to Azuma on December 8, 2014. Ms. McGuire testified further that she received a telephone call on her cellphone from BJ Roscoe or Robbins, who identified himself as the president of Azuma. Ms. McGuire testified, "He said that he was going to try to help Martin

because he wasn't sure if Doug Tibbs reported the injury correctly and that he would let me know. And then, that was it."

Mary Becerra, Azuma's Human Resource Director, testified that Azuma "always tries to accommodate restrictions." Ms. Becerra testified that Azuma terminated Mr. Backer because he did not respond to her letter dated December 3, 2014. Ms. Becerra did not receive the fax from Mr. Backer, dated December 8, 2014, until December 9, 2014, because Mr. Backer faxed the letter to the general fax number. Ms. Becerra testified that she completed a Separation Notice, listing "Job Abandonment" as the reason for separation. Prior to her December 3, 2014 letter, Ms. Becerra testified that she attempted on several occasions to contact Mr. Backer on both his personal phone and on the company phone, as did Doug Tibbs, City Manager for Nashville, and Bryan Cobb, Director of Operations. Ms. Becerra further testified that Mr. Backer's November 18, 2014 schedule showed "he had a delivery for a washer, not a stackable, to the Viera Cool Springs apartments, but it was rescheduled."

On cross-examination, Ms. Becerra admitted that Mr. Backer completed deliveries on November 18, 19, 20, 21, and 24, 2014. Following Mr. Backer's termination, Ms. Becerra admitted that Azuma replaced Mr. Backer with another employee. When asked whether Azuma accommodated any employee's restrictions in the Nashville area, Ms. Becerra admitted that she could not recall any employee accommodated in the Nashville area. Ms. Becerra also testified that Azuma assigned Mr. Backer an android tablet that listed his daily delivery schedule, which Mr. Backer had not returned. On redirect, Ms. Becerra requested that Mr. Backer return to Azuma the company phone and android tablet in accordance with the company's equipment policy.

Doug Tibbs, Azuma's City Manager for the Nashville area, testified he supervised Mr. Backer in November 2014. Mr. Tibbs testified that Mr. Backer first reported an injury on November 25, 2014, when he appeared in his office. Mr. Tibbs testified, "he [Mr. Backer] came in, he stated that he had hurt himself and did not believe that he was going to be able to work." Mr. Tibbs further testified that "He [Mr. Backer] stated that, when he was at home, he had 'a sneezing fit of about 10-12 sneezes,' he stated that he felt the pain in his neck area, shoulder blade area, and right after that, he reached up into a cabinet or cupboard for some allergy medication." Mr. Tibbs testified also that, approximately one week later, Mr. Backer came to him and indicated, "he did have an injury, it was due to work." Mr. Tibbs testified that Mr. Backer advised him that he planned to seek treatment from a chiropractor. Subsequently, Mr. Backer provided Mr. Tibbs a note from the chiropractor stating Mr. Backer was under the care of the chiropractor and provided reasons why he would be out of work on certain dates. Other than the November 25, 2014 incident at home, Mr. Tibbs denied that Mr. Backer reported any work injury involving a delivery. Mr. Tibbs testified that he told Mr. Backer to go to Concentra for a drug screen and advised him, "Azuma was going to go ahead and open up a claim for him to try to help him out." Mr. Tibbs testified

8

that he repeatedly called Mr. Backer to inquire as to how he was doing, but he never responded.

On cross-examination, Mr. Tibbs did not recall any conversation with Mr. Backer, wherein Mr. Backer reported a November 18, 2014 work injury to him on November 19, 2014, or that Mr. Backer reported that he hurt since November 18, 2014. Mr. Tibbs admitted that Azuma hired another employee to work in the Nashville area following Mr. Backer's termination.

Bryan Cobb, Azuma's Director of Operations, testified that he hired Mr. Backer in July 2014, while working in the capacity of Regional Manager for Azuma. Mr. Cobb testified that, on December 3, 2014, he learned from Doug Tibbs that Mr. Backer claimed an injury. Mr. Cobb testified that he called Mr. Backer twice on December 3, 2014, and a few times in the following days, but received no response from Mr. Backer. Mr. Cobb testified that Azuma assigned Mr. Backer an android tablet and cell phone, which he could have used to communicate with Azuma to report an injury.

Scott Lewis, a claims adjuster for Travelers Insurance, testified that he electronically filed the First Report of Work Injury concerning Mr. Backer's claim. He further testified that he prepared the panel of physicians and sent the panel to Mr. Backer, who returned the form after selecting Carespot. Mr. Lewis testified that he obtained a recorded statement from Mr. Backer in the course of his investigation of his claim. Mr. Lewis testified that Travelers Insurance denied the claim and filed a Notice of Denial of Claim for Compensation.

On cross-examination, Mr. Lewis admitted that Azuma did not authorized Mr. Backer to seek care at Carespot, whom he selected from the panel, because Travelers Insurance denied his claim for workers' compensation benefits due to a "subsequent, intervening incident." Mr. Lewis testified:

> [I]t was his sneezing fit that occurred on the morning of the 25th, I believe it was, at his home. He worked full time without any notice of claim. He was able to do his job fully from the time that he claims he suffered an injury up until that morning. He did not seek any treatment and the only thing, uh that, the reason that he sought treatment was because of the sneezing fit. If not for the sneezing fit and his back locking up, it didn't appear he was going to seek treatment because he hadn't before.

### Mr. Backer's Contentions

Mr. Backer, through counsel, contends that Mr. Backer legitimately sustained an injury on the job. When Azuma failed to respond and ignored his explanation, Mr. Backer

sought treatment from a chiropractor, Dr. Sweeney. Dr. Sweeney recorded a history from Mr. Backer, examined him, assessed a diagnosis consistent with the injury, recommended that Mr. Backer not work, and referred Mr. Backer to a specialist if his condition did not improve. *See* Exhibit 1, p. 2. Azuma's Carrier denied the claim because of a subsequent, intervening event. Mr. Backer cites *Anderson v. Westfield Group*, 259 S.W.3d 690 (Tenn. 2008) in support of his case. Azuma is responsible for the direct and natural consequences of the November 18, 2014 work injury. Mr. Backer argues that the sneezing fit and reaching into a cabinet were not subsequent, intervening events and are not acts of negligence. Mr. Backer's neck and shoulders did not stop hurting from the November 18, 2014 incident. Mr. Backer told Mr. Tibbs of the November 18, 2014 injury. Mr. Backer went to the chiropractor to seek relief. Azuma did not schedule an appointment for Mr. Backer with the physician selected from the panel of physicians. Mr. Backer asks the Court to find that Azuma must accept the Employee's choice of physician as selected by the panel, authorize and schedule an appointment for the physician chosen, and award temporary total disability benefits from November 25, 2014, based upon Dr. Sweeney's findings, until there is a further determination of Mr. Backer's temporary disability status.

## Azuma's Contentions

Azuma, through counsel, contends that Mr. Backer bears the burden of proving every element of his case, and, under the *McCall* standard, he must demonstrate that he is likely to succeed on the merits at trial. Azuma did not receive notice of a work injury on November 18, 2014, despite Mr. Backer's possession of a company tablet and cell phone. Mr. Backer continued working and did not seek treatment until following the sneezing fit on November 25, 2014.

Azuma challenges Mr. Backer's credibility based upon conflicting information provided in his Azuma Leasing Employment Application, his responses to interrogatories, and his recorded statement and concerning his education, his job history, a prior motor vehicle accident, his prior criminal history, and the November 25, 2014 incident at home. Mr. Backer admitted to many contradictions in the record. Mr. Backer testified he delivered a stackable washer and dryer on November 18, 2014, in Cools Springs, but his schedule showed he did not.

Azuma asserts that the Court may consider all evidence, including the recorded statement, to determine Mr. Backer's credibility. Azuma avers that, in the recorded statement, Mr. Backer stated he sneezed, felt pain, and his back locked up. Later, in the recorded statement, Mr. Backer stated he reached into the cabinet, felt pain and his back locked up. Mr. Backer first denied that he reported the sneezing event, and then later stated that he told Mr. Tibbs of the sneezing event.

Azuma avers that it attempted on numerous occasions, through several individuals, to

10

contact Mr. Backer, but he did not respond. The December 3, 2014 letter confirmed Azuma's attempts to contact Mr. Backer and Mr. Backer failed to respond, with the exception of the fax of December 8, 2014. Mr. Backer's only response was to send Azuma a fax on December 8, 2014, advising that he was not abandoning his job.

Azuma further contends that Mr. Backer knew of Azuma's company policies concerning drug screens following work injuries, but he refused to submit to the drug screen. He testified that he was fearful of seeking treatment at Concentra, but he did not notify Azuma of his objections or concerns. His actions reflected noncompliance, pursuant to Tennessee Code Annotated section 50-6-204 (2014).

Azuma argues that its denial of the claim should stand because there is no proof that Mr. Backer sustained an injury at work. Dr. Sweeney's April 28, 2015 letter fails to satisfy the requirements of Tennessee Code Annotated section 50-6-102(13) (2014) and fails to state his opinion within a reasonable degree of certainty. Moreover, Mr. Backer did not report sneezing event to Dr. Sweeney such that his opinion on causation did not consider all causes as required by the statute. Azuma cites *Tindall v. Waring Park*, 725 S.W.2d 935 (Tenn. 1987), and *Trosper v. Armstrong*, 273 S.W.3d 598 (Tenn. 2008), to support its position.

Azuma further argues that Mr. Backer is not entitled to temporary total disability benefits. Azuma had light duty work available. Mr. Backer abandoned his job and Azuma terminated him for failure to contact it. But for Mr. Backer's job abandonment, Azuma would have accommodated his restrictions if a treating physician placed light duty restrictions on his activities.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). At an expedited hearing, an employee need not prove every element of his or her claim by a preponderance of the evidence in order to be eligible for benefits. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk Comp App Bd LEXIS 6, *7-8, 9 (Tenn. Workers' Comp. App. Bd. March 27, 2015); *cf. McCall v. Nat'l Health Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003). Instead, an employee must come forward with sufficient evidence from which the trial judge could conclude that the employee is likely to prevail at a hearing on the merits. *Id.*

11

*Factual Findings*

This Court finds that Mr. Backer sustained an injury to his neck and upper back on November 18, 2014, while making a delivery for Azuma Leasing. Mr. Backer continued working that day and returned to work on November 19, 20, 21, and 24, 2014. On the morning of November 25, 2014, Mr. Backer dressed for work, sneezed several times and reached for allergy medication from a cabinet at his home, when he experienced pain in his neck and back, and his body locked up. Mr. Backer reported a work injury and the incident at home to Azuma within thirty days of both incidents. Upon receiving notice of Mr. Backer's desire to file a claim for workers' compensation benefits, Azuma instructed Mr. Backer to go to Concentra Urgent Care for a post-accident drug screen and for medical treatment. Mr. Backer refused to go to Concentra to complete the drug test and did not report any objection with Concentra to Azuma. Azuma thereafter provided Mr. Backer a panel of physicians, from which Mr. Backer selected Carespot, but Azuma did not authorize an appointment for Mr. Backer at Carespot.

*Application of Law to Facts*

The Tennessee Workers' Compensation Act defines "injury" and "personal injury" as an injury by accident, . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee; provided, that:

(A) An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment;

(B) An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes;

(C) An injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes;

(D) "Shown to a reasonable degree of medical certainty" means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility;

12

(E) The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence.

Tenn. Code Ann. § 50-6-102(13) (2014).

In the present case, Mr. Backer reported a specific incident, identifiable by time and place, which occurred while he performed his job duties at Azuma. The issue then turns to whether the November 18, 2014 incident resulted in an injury arising primarily out of and in the course and scope of his employment at Azuma, and shown by a reasonable degree of medical certainty. The only medical opinion contained in the record before this Court that addressed causation is the report of Dr. Sweeney, an unauthorized treating physician. Dr. Sweeney stated in his letter of April 28, 2015, "I have diagnosed Mr. Backer with cervical sprain/strain and mild discopathy due to the trauma he sustained with lifting an object at work... His injury in my clinical opinion was work related." *See* Exhibit 1, p. 2. Because Dr. Sweeney is not an authorized treating physician, selected from a panel, Tennessee Code Annotated section 50-6-102(13)(E)(2014) does not afford Dr. Sweeney a presumption of correctness on the issue of causation. Moreover, Dr. Sweeney's opinion on causation in his April 28, 2015 letter is not shown within a reasonable degree of medical certainty, considering all causes, because his chiropractic treatment records do not contain any reference to the November 25, 2014 incident that occurred at Mr. Backer's home, thereby confirming Dr. Sweeney's knowledge of the November 25, 2014 incident at home.

In *Anderson v. Westfield Grp.*, 259 S.W.3d 690, 696-97 (Tenn. 2008), cited by Mr. Backer, the Tennessee Supreme Court discussed the general rule that a subsequent injury, whether in the form of an aggravation of the original injury or a new and distinct injury, is compensable if it is the "direct and natural result" of a compensable injury. *Id.* (quoting *Rogers v. Shaw*, 813 S.W.2d 397, 399-400 (Tenn. 1991)). The "direct and natural consequences" rule is limited, however, when the subsequent injury results from independent intervening causes, such as the employee's own conduct. Generally, "[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, *unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct*." *Id.* (quoting 1 Larson's Workers' Compensation Law § 10 (2004) (emphasis added). More specifically, "the progressive worsening or complication of a work-connected injury remains compensable *so long as the worsening is not shown to have been produced by an intervening nonindustrial cause*." *Id.* (emphasis added). An employee's intervening conduct can break the chain of causation necessary to impose liability for a subsequent injury based on the direct and natural consequences concept. *Id.*

In this case, the evidence established that a subsequent, intervening incident occurred on November 25, 2014, when Mr. Backer sneezed several times, reached into a cabinet for

13

allergy medication, and felt neck and back pain and his body locked up. Dr. Sweeney's records failed to demonstrate whether he had knowledge of the November 25, 2014 incident at home. As such, the medical evidence does not address whether the November 25, 2014 incident at home is a "direct and natural consequence" of the original work injury or an "intervening, nonindustrial cause."

In *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk Comp App Bd LEXIS 6 (Tenn. Workers' Comp. App. Bd. March 27, 2015), the Workers' Compensation Appeals Board held:

> Thus, mere notice of an alleged workplace accident, in and of itself, does not trigger an employer's duty to provide medical benefits in every case, without regard to the particular circumstances presented. If an employer chooses to deny the claim following its initial investigation, the employee must come forward with sufficient evidence from which the trial court can determine that the employee likely will prove a compensable "injury by accident" at a hearing on the merits in accordance with section 50-6-239(d)(1). Conversely, an employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice and/or that it may be subject to penalties for failure to provide a panel of physicians and/or benefits in a timely manner.

*Id.* at *13.

Azuma denied this claim on January 12, 2015. Based upon the *McCord* decision, Mr. Backer must come forward with sufficient evidence from which the Court may determine that he will prove a compensable injury by accident at a hearing on the merits. The medical evidence introduced by Mr. Backer failed to prove a compensable injury by accident because it failed to address the November 25, 2014 incident at home and failed to address whether such incident was a "direct and natural consequence" of the original work injury or an "intervening, nonindustrial cause." Azuma attacked Mr. Brock's credibility on several issues, including his education, prior criminal record, prior motor vehicle accident and prior injuries, and his description of the incidents at issue in this case. This Court finds that Mr. Brock's inconsistent statements on these various issues do not destroy Mr. Brock's credibility with regard to his version of how the injury occurred. However, this Court finds that Mr. Backer's testimony concerning the November 25, 2014 incident at home is insufficient to establish that the incident was a "direct and natural consequence." Accordingly, based upon the evidence available at this time, this Court concludes that Mr. Backer failed to establish that he is likely to prevail at a hearing on the merits.

14

IT IS, THEREFORE, **ORDERED** as follows:

1. Mr. Backer's claim against Azuma Leasing and its workers' compensation carrier for the requested workers' compensation benefits is denied at this time.

2. This matter is set for Initial Hearing on August 19, 2015, at 8:00 a.m. central time/ 9:00 a.m. eastern time.

**ENTERED this the 2nd day of July, 2015.**

**JUDGE PAMELA B. JOHNSON**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing is scheduled for August 19, 2015, at 8:00 a.m. central time/ 9:00 a.m. eastern time, before Judge Pamela B. Johnson, for the Court of Workers' Compensation Claims. You must call (865) 594-0091 or toll free (855) 543-5041 to participate in the Initial Hearing.

Please Note: You must call in at the scheduled date and time to participate. Failure to call in may result in a determination of the issues without your further participation

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten (10) calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other

15

delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten (10) calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5.  The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Court Clerk may submit the record to the Clerk of the Appeals Board.

6.  If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 2nd day of July, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| C. Kim Thompson, Esq. | | | X | kthompson@tlgpllc.com |
| L. "Chip" Storey, Jr., Esq. | | | X | CSTOREYJ@travelers.com |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov